**MATLACK, INC., a Pennsylvania corporation qualified to do business in Delaware, Plaintiff,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, an agency of the United States Government, Defendant.**

Civ. A. No. 94–156–JLL.

United States District Court,
D. Delaware.

Nov. 15, 1994.

Allen M. Terrell, Jr., Frederick L. Cottrell III, and Francis DiGiovanni of Richards, Layton & Finger, Wilmington, DE, and Baker, Worthington, Crossley, Stansberry & Woolf, Knoxville, TN, of counsel, for plaintiff.

Gregory M. Sleet, U.S. Atty., and Patricia C. Hannigan, Asst. U.S. Atty., Wilmington, DE, and Alan D. Margolis, Office of General Counsel, Washington, DC, and Sherry L. Estes, Office of Regional Counsel, Region V, Chicago, IL, for defendant.

## OPINION

LATCHUM, Senior District Judge.

### I.  Procedural History

On August 12, 1993, the plaintiff, Matlack, Inc. ("Matlack"), through its Vice President—General Counsel, Klaus M. Belohoubek, received from the Environmental Protection Agency ("EPA"), a Request for Information ("EPA Request") pursuant to section 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, Pub.L. No. 96–510, 94 Stat. 2767 (codified as amended in scattered sections of 42 U.S.C.).  The EPA Request sought any information from Matlack pertaining to a landfill site known as the Stickney Avenue Landfill and the Tyler Street Dump in Toledo, Ohio (the "Site"). · Matlack, having no record of its involvement at the Site, on August 24, 1993, sent the EPA a request for any documents linking Matlack to the Site. Matlack alleges, and the EPA does not dispute, that there was no response to the first request.  On September 3, 1994, Matlack responded to the EPA Request.  On December 1, 1993, the EPA sent a proposed Administrative Order on Consent seeking an indication from Matlack of its willingness to perform or reimburse the EPA with respect to certain activities proposed at the Site.  Matlack was also named a potentially responsible party ("PRP").  On December 7, 1993, Matlack sent a second request to the EPA pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988), for the requested documents.  Shortly after sending the second request, Matlack received a phone call from Ms. Sherry L. Estes, the Regional Counsel for the EPA.  At that time, Ms. Estes informed Matlack that it had no documents linking Matlack to the Site except for one transcribed interview and that the EPA was withholding the document on attorney work-product grounds.  In response to that phone call, on December 17, 1993, Matlack sent a third request to the EPA under FOIA in which it sought, inter alia, a copy of the purported interview.  Having received no response to its latest request, Matlack, on January 17, 1994, filed an administrative appeal with the EPA pursuant to 40 C.F.R. § 2.114(a) (1993) contesting the EPA's refusal to provide the requested information.  On January 19, 1994, the EPA received the appeal.  On February 15, 1994 Matlack re-

ceived a written response to its last request.[1] This response was not within the 20 day time limit set by statute, 5 U.S.C. § 552(a)(6)(A)(ii), and regulation, 40 C.F.R. § 2.117(a) (1993). As a result of the EPA's failure to comply with the time limits imposed, Matlack is deemed to have exhausted its administrative remedies. 5 U.S.C. § 552(a)(6)(C).

After waiting nearly an additional six weeks without word from the EPA, Matlack on March 25, 1994, brought this suit, pursuant to the FOIA, seeking disclosure of various documents that the EPA had in its files allegedly linking Matlack to the Site. On April 15, 1994, the EPA telephoned Matlack and indicated that there was one document responsive to their request and that it was exempt from disclosure, but that the EPA was considering a discretionary release. On May 4, 1994, the EPA again telephoned Matlack. This time the EPA indicated that there were six additional documents responsive to Matlack's request and maintained its representation that all the relevant documents were exempt from disclosure but would possibly be released on a discretionary basis. On May 19, 1994, the documents were indeed released, albeit with some redactions. Matlack, satisfied with the documents in their redacted form, no longer seeks a court order mandating further disclosure. (D.I. 6 at 5.) Matlack, however, subsequently filed a motion for attorney's fees and other litigation costs ("attorney's fees") pursuant to 5 U.S.C. 552(a)(4)(E).[2] This Court will now discuss the merits of this motion.

---

1. The body of the letter reads as follows:

   This letter is to acknowledge receipt of your appeal. We have a large docket of Freedom of Information Act appeals and are working as quickly as possible to resolve them. These appeals are being handled on a first-come, first-served basis. Due to our caseload, I am unable to predict when a decision will be issued on your appeals [sic], but it will be as soon as possible.

   Docket Item ("D.I.") 11, Ex. A.

2. In view of Matlack's position, the complaint will be dismissed and this Opinion will be directed only to the question of whether to award attorney's fees.

   The FOIA attorney's fees provision reads:

## II. Discussion

█ In order to determine whether to award attorney's fees this Court must engage in a two-pronged inquiry. First, is the plaintiff eligible for attorney's fees? This decision is controlled by whether the plaintiff has "substantially prevailed" in the instant action within the meaning of 5 U.S.C. § 552(a)(4)(E). If the plaintiff has substantially prevailed then the court proceeds to the second prong of the inquiry: if eligible, is the plaintiff entitled to attorney's fees? The decision on this prong is ultimately left up to this Court's equitable discretion, but is guided by the Court's analysis of four factors: (1) the public benefit derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding had a reasonable basis in law. *Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1093 (D.C.Cir.1992). These four factors are designed to guide the court but are not exhaustive of the factors a court may consider. The United States Court of Appeals for the District of Columbia Circuit has long been on the leading edge of interpreting the parameters of what a federal agency must disclose and may withhold consistent with the terms of FOIA.[3] As a result, the parties and this Court primarily rely on authority from that Circuit.

### A. Eligibility For Attorney's Fees

█ In order to be eligible for attorney's fees a plaintiff must have "substantially prevailed" within the meaning of 5 U.S.C.

> The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

5 U.S.C. § 552(a)(4)(E).

3. This is due, in large part, to the venue provisions of the FOIA providing that a plaintiff may always file the action in the District of Columbia:

   > On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction....

   5 U.S.C. § 552(a)(4)(B).

§ 552(a)(4)(E). It is not necessary to obtain a court order mandating disclosure in order to substantially prevail; however, the party seeking such fees in the absence of a court order must show (1) that the action could reasonably be regarded as necessary to obtain the information, and (2) that a causal nexus exists between that action and the agency's surrender of the information. *Church of Scientology of California v. Harris,* 653 F.2d 584, 588 (D.C.Cir.1981). Therefore, it is clear that a mere filing of a suit followed by disclosure is not dispositive of the issue. *Frye v. EPA,* 1992 WL 237370, at *2 (D.D.C.1992) (quoting *Weisburg v. U.S. Dep't of Justice,* 745 F.2d 1476, 1496 (D.C.Cir.1984)). An analysis of the facts before this Court, however, compels the conclusion that Matlack did substantially prevail in this action. First, the "reasonable necessity" of a lawsuit is determined from the perspective of a reasonable person in the position of the requester. *Chesapeake Bay Foundation, Inc. v. U.S. Dep't of Agriculture,* 11 F.3d 211, 216 (D.C.Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994) (citing *Fund for Constitutional Gov't v. Nat'l Archives & Records Service,* 656 F.2d 856, 872 (D.C.Cir.1981)). Here, Matlack filed three requests for information. In each instance the requests were either inexplicably ignored or handled in a way that violated regulations, with the net result that no disclosure was forthcoming. Upon filing an appeal, Matlack was told in effect, "we have received your appeal; we don't know when we will be able to resolve it." After waiting five and one half weeks with no further communication from the EPA, in the face of statutory and regulatory mandates to respond within 20 days, Matlack believed, and indeed any reasonable person in Matlack's position would have believed, that a suit was necessary to compel disclosure. Second, the causal nexus required must be such that the litigation "substantially caused" the release of the documents, *Chesapeake Bay Foundation, Inc.,* 11 F.3d at 216. This Court finds that the instant action substantially caused the release of the documents. The EPA, in response to Matlack's appeal, merely stated that "due to our caseload, [we] are unable to predict when a decision will be made on your

appeal ...," (D.I. 11, Ex. A). At oral argument, the EPA suggested that a "simple telephone call" would have resolved the situation. This Court is unconvinced. While this Court expresses no opinion on whether the documents might have eventually been released absent this litigation, "the mere fact that a FOIA requester might have ultimately received the documents in question in the absence of litigation is not a sufficient basis for a finding that it has not substantially prevailed for purposes of an award of attorney fees." *Fund for Constitutional Gov't,* 656 F.2d at 871. Based on the present record, this Court concludes that the release of the relevant documents was substantially caused by the instant action. This is not a situation where the plaintiff has unreasonably rushed to litigation in an effort to secure preferential treatment. *Id.* Because this Court has found that Matlack's action was reasonably necessary and substantially caused the release of the documents, this Court further finds that the plaintiff "substantially prevailed" in this action, and is therefore eligible for attorney's fees.

### B. Entitlement To Attorney's Fees

■ A determination by this Court that the plaintiff is eligible for attorney's fees does not imply that attorney's fees will be awarded automatically. Rather this Court must now engage in a balancing of the four factors relevant to the second prong of the attorney's fees inquiry, in order to guide its equitable discretion as to whether to award attorney's fees.

#### i. The Public Benefit Derived From The Case

In *Blue v. Bureau of Prisons,* 570 F.2d 529, 533 (5th Cir.1978), it was stated:

> With respect to the first of these considerations—"the benefit to the public deriving from the case"—it is doubtless true, as the D.C.Circuit has suggested, that the successful FOIA plaintiff always acts in some degree for the benefit of the public, both by bringing government into compliance with the FOIA disclosure policy and by securing for the public at large "the benefits assumed to flow from the public disclo-

sure of government information." *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1367 (1977). Yet the Senate Report's discussion of this criterion referred repeatedly to disclosure to the press and to public interest organizations, thus strongly suggesting that in weighing this factor a court should take into account the degree of dissemination and likely public impact that might be expected from a particular disclosure. S.Rep. No. 854, 93d Cong., 2d Sess. 19 (1974). This goes to the central purpose of the disclosure act: to assist our citizenry in making the informed choices so vital to "the maintenance of a popular form of government."

*Id.* at 2.[4]

In this case Matlack argues that it is in the public interest that all PRPs be given access to documents linking them to clean-up sites in order to rapidly determine whether to participate in the clean-up, thereby potentially speeding up the clean-up process. The EPA argues that the documents in this case were only relevant to Matlack's activities at the Site, and contributed minimally to the public fund of information. While it is true that there is some public benefit derived from every successful FOIA litigant and indeed the public benefits from a rapid clean-up of toxic sites as opposed to long delays caused by litigation such as this, there does not appear in this case to be the kind of public dissemination of information or public impact from the release of this information that Congress envisioned as creating a public benefit. Therefore, as to this factor, the balance tips towards a denial of an award of attorney's fees.

### ii. The Commercial Benefit To The Complainant And The Nature Of Plaintiff's Interest.

The second and third factors are closely related and are often considered together, this Court will follow this trend. *See Tax Analysts,* 965 F.2d at 1095. In *Tax Analysts,* the District of Columbia Court of Appeals, affirming the district court's analysis of these two factors, stated that:

> The district court found that Tax Analysts had a motive to bring its FOIA lawsuit

independent of the attorney's fees incentive and that the second and third criteria therefore militated against an award of fees. "[I]t is evident," the district court said, "that plaintiff was not motivated by simply altruistic instincts...." The district court noted that the motive to obtain the documents might not have been strictly commercial ... but to suffice under that second and third factors, a motive need not be strictly commercial; any private interest will do.... [T]he district court concluded that Tax Analysts had sufficient private incentive to seek disclosure of the documents and that therefore, an award of attorney's fees was not necessary to promote FOIA litigation of the sort Tax Analysts pursued.

*Id.* at 1095. Similarly, here Matlack's underlying incentive to engage in this FOIA litigation was to evaluate the possibility of avoiding liability for the clean-up of the Site. While Matlack certainly did not have a commercial interest in the sense of soliciting business with the information obtained, its private interest in fighting its designation as a PRP and the resulting liability was a sufficient incentive to institute this FOIA litigation regardless of the attorney's fees provision. Therefore, these two factors taken together also point toward a denial of attorney's fees.

### iii. The Government's Withholding Did Not Have A Reasonable Basis In Law.

The fourth factor calls for the Court to analyze the government's basis for withholding the documents. If the government's position in withholding the documents was correct, that is dispositive and fees will not be awarded. *Chesapeake Bay Foundation, Inc.,* 11 F.3d at 216. If the government had a "colorable basis in law" to withhold the documents then this factor is weighed along with all the other factors. *Id.* However, if the government has engaged in obdurate behavior then an award of fees can be appropriate even if other factors weigh against it.

---

**4.** The 5th Circuit's reasoning was promptly adopted by the District of Columbia Court of

Appeals in *Fenster v. Brown,* 617 F.2d 740, 744 (1979).

Initially, the government through its regional officer, Ms. Estes, asserted that the document in question,[5] was exempt from disclosure under both exemption 5 and exemption 7, 5 U.S.C. § 552(b)(5), (7).[6] After the instigation of litigation and the discovery of six additional documents, the government now takes the position that all the documents, although voluntarily released, are exempt from mandatory disclosure as "investigatory records," (D.I. 11, p. 11), presumably under exemption 7. After reviewing the documents at issue in this case, attached as redacted to the affidavit of Mr. Frederick L. Cottrell, III, (D.I. 8, Ex. B), consisting of an index of the seven documents and the documents themselves, this Court concludes that the EPA had no "colorable basis in law" to withhold these documents as they are clearly not covered by exemptions 5 and 7 in light of the final sentence of § 552(b). A review of the documents themselves reveals that any arguably exempt portion of the documents was "reasonably segregable."

■ In defending its actions the EPA, in addition to alleging that the documents were exempt from disclosure, cites *Simon v. United States*, 587 F.Supp. 1029, 1032 (D.D.C. 1984), for the proposition that "while an agency's failure to meet deadlines is not to be condoned, it does not warrant an award of fees in and of itself. Here, without evidence of bad faith, the court declines to impose a fee award to sanction sluggish agency response." *Simon*, however, involved a situation where there was never any withholding of documents; the government never refused to release documents nor asserted a frivolous legal defense to plaintiff's action. *Id.* at 1032. The EPA also cites *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C.Cir.1976), for the proposition that "[t]he good faith effort and due diligence of the agency to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act." Indeed as is indicated by the letter from the EPA, (D.I. 11, Ex. A), the EPA does assign FOIA requests on a first-in, first-out basis. However, the court stated this proposition after determining that "exceptional circumstances" existed pursuant to § 552(a)(6)(C).[7] In this case the EPA has not provided the Court with any evidence that exceptional circumstances exist. Instead, the EPA relies on its defense that the documents are exempt from mandatory disclosure and not that it needed a longer time period to complete Matlack's request. The EPA's failure to assert this defense, coupled with its bald assertion in its letter, (D.I. 11, Ex. A), to Matlack that "[w]e have a large docket of Freedom of Information Act appeals and are working as quickly as possible to resolve them," without more, is simply insufficient to demonstrate "exceptional circumstances" within the meaning of § 552(a)(6)(C). *Cf. Open America*, 547 F.2d

5. At this stage in the administrative procedures only one document had been identified.

6. 5 U.S.C. § 552(b) enumerates nine separate exemptions from the requirements of the FOIA: Exemption 5 reads:
   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;
   5 U.S.C. § 552(b)(5).
   Exemption 7, in relevant part, reads:
   investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, ... (C) constitute an unwarranted personal invasion, ... (D) disclose the identity of a confidential source ..., (E) disclose investigative techniques and procedures....
   5 U.S.C. § 552(b)(7).

After listing the nine exemptions, § 552(b) states in its final sentence:
   Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

7. § 552(a)(6)(C) reads:
   Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph. If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.

at 610–12 (uncontroverted FBI affidavit demonstrated exceptional circumstances were present). The EPA's attempt to justify its delay is dilatory and insufficient.

This Court therefore finds that the EPA's withholding of the documents was without a reasonable basis in law and that the EPA's delay was not justified. Remaining now to be decided is whether to award attorney's fees.

### C. Award of Attorney's Fees Is Left To Equitable Discretion of Court

While this Court is directed to weigh the above four factors, the sifting of those factors over the facts of the case is a matter of district court discretion. *Tax Analysts*, 965 F.2d at 1094. The first factor, and the second and third factors taken together, weigh against an award of attorney's fees. The fourth factor weighs in favor of an award of attorney's fees. This Court in its discretion finding that the factors are equally balanced will enter an order denying the award of attorney's fees. This action is not to be taken as condoning the EPA's delays and assertion of exemptions without merit.

### III. Conclusion

For the reasons set forth above this Court will deny Matlack's motion for attorney's fees. A judgment will be entered forthwith in accordance with this opinion.[8]

---

**8.** The EPA filed a motion for leave to file a sur-reply brief and attached the sur-reply brief itself. Matlack in return filed a motion for leave to file a reply to the EPA's sur-reply brief and attached its reply. The parties did not address these motions in their oral argument, and the Court having rendered its decision after considering the sur-reply brief and response thereto now finds these motions to be moot.