**HORSEHEAD INDUSTRIES, INC. and Lauren H. Kravetz, Plaintiffs,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Defendant.**

No. CIV. A. 94–1299 JHG.

United States District Court, District of Columbia.

March 23, 1998.

Paul Eric Gutermann, Laura M. Reifschneider, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, DC, for Plaintiffs.

Sherri Lanette Evans, Lisa MacPhee, U.S. Attorney's Office, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiffs, Horsehead Industries, Inc. and its former attorney, Lauren H. Kravetz, (collectively "Horsehead") filed this action to obtain documents from the Environmental Protection Agency ("EPA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1994).[1] In two unpublished opinions, this Court resolved the merits of the disputes over Horsehead's FOIA requests, ordering a portion of the requested records to be disclosed and holding that other documents were exempt from the FOIA disclosure requirements. *Horsehead Indus., Inc. v. EPA,* No. 94–1299 (Oct. 1, 1996) (hereafter "October 1996 Opinion"); *Id.* (Jan. 3, 1997) (hereafter "January 1997 Opinion"). What remains to be resolved is Horsehead's request for attorneys' fees. The Court finds that, under the FOIA, Horsehead is eligible to be awarded attorneys' fees, but that, upon consideration of the four principal factors that guide the Court's discretion in awarding fees, Horsehead is not entitled to a fee award.

Therefore, Horsehead's request shall be denied.

### BACKGROUND

In 1981, Horsehead acquired 2,137 acres of land in Palmerton, Pennsylvania, on which it conducted zinc-based manufacturing activities. On a portion of the site, Horsehead later operated a facility called Horsehead Resource Development Co., which recycled a lead-laden dust. Prior to Horsehead's acquisition of the land, primary zinc smelting activities were conducted on the site dating to 1898.

In 1983, EPA listed the Palmerton Zinc Superfund Site on the National Priority List. 48 Fed.Reg. 40666 (Sept. 8, 1983). While studies were conducted regarding the nature of the contamination at the Palmerton Site, and although EPA may have developed preliminary conclusions that Horsehead was potentially responsible, it was not until 1991 that EPA Region III directed the National Enforcement Investigation Center ("NEIC") to conduct an investigation to determine the source or sources of the contamination and to provide support for possible enforcement action.

In June 1993, the NEIC completed its draft report and circulated it for peer review. The peer review comments were submitted on June 8, 1993 ("Peer Review memorandum"). And, by way of his memorandum of July 3, 1993, Frederick MacMillan, Remedial Project Manager for Eastern Pennsylvania and the manager for the Palmerton site, provided comments on the draft report ("MacMillan memorandum").

On July 7, 1993, EPA provided Horsehead with a "Notice of Potential Liability." This notice stated in relevant part: "This letter confirms notification of potential liability, as defined by [CERCLA] that your company, Horsehead Industries, Inc. (HII), including its division Zinc Corporation of America (ZCA), may have incurred with respect to the [Palmerton] Site." Pls. Mem. in Opp'n to

---

1. Initially, Horsehead Industries, Inc. was the sole plaintiff, however, the FOIA requests at issue had been sent by Kravetz. To moot a jurisdictional dispute and resolve the merits of this dispute without resort to refiling, the Court granted Horsehead Industries' motion to amend its complaint to include Kravetz as a party plaintiff.

Summ. J. Ex. 24 (EPA Region III Letter of July 7, 1993).

In January 1994, prior to finalization of the NEIC report, EPA Region III issued a press release that disseminated the preliminary results of the source identification study. In this press release, EPA stated that "[t]he study confirms that contamination remaining from historical primary zinc smelting significantly contributes to lead, cadmium and zinc contamination with Palmerton soil and homes." Pls. Summ. J. Mem. Ex. D (EPA Press Release 94–63 (Jan. 27, 1994)). The press release also stated:

> These results, among others, support EPA's assertion that Horsehead Industries and Paramount Communications, both of which owned the zinc smelting plant at one time, are responsible for major portions of the residential contamination.

> Final results of the source identification study are due soon and should show remaining major sources of contamination. No other information about source identification is available at this time, though EPA will deliver the report as soon as it is available.

*Id.* at 2.

In February 1994, Horsehead submitted FOIA requests to EPA Region III and to the NEIC seeking all drafts of the NEIC report, all comments on drafts of the report, and all data underlying the preliminary conclusions reported by EPA the previous month. EPA Region III provided one document responsive to Horsehead's request (a draft press release). NEIC stated that the only documents it had that were responsive to the request were exempt from disclosure under FOIA Exemption 7(A), claiming that their release could reasonably be expected to interfere with an enforcement proceeding. Horsehead appealed the denials within EPA, but received no response.

2. EPA invoked Exemption 6 to protect a page in the draft report entitled "Confidential Reference Chart Associating Palmerton Residence Codes With Street Addresses." 1993 draft report, at 52. Horsehead initially made no objection to the assertion of Exemption 6 to protect this document. When this list reappeared in the docu-

In June 1994, the final report was released. The preliminary findings reported earlier that year were adopted as final. Also in June 1994, Horsehead filed the instant suit. In its Amended Complaint, Horsehead sought an order directing EPA to produce all documents responsive to its FOIA requests. EPA invoked FOIA Exemption 5, 5 U.S.C. § 552(b)(5), deliberative process, with respect to three documents: (1) the 1993 draft NEIC report; (2) the Peer Review memorandum dated June 8, 1993; and (3) the MacMillan memorandum dated July 2, 1993.[2] After conducting *in camera* review of these documents, the Court largely sustained EPA's position, requiring disclosure of only a very slightly redacted version of Appendix III attached to the 1993 draft NEIC report. October 1996 Opinion at 20–21.

The dispute was not fully resolved at that juncture, however, because EPA had failed to show that it had conducted an adequate search for documents at NEIC. EPA was directed to file an affidavit from a person at NEIC with personal knowledge demonstrating that EPA had "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." October 1996 Opinion (quoting *Oglesby v. Department of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990)).

Horsehead's FOIA requests had been made by its attorney, Kravetz, *see* Amended Compl. ¶¶ 25, 26 & Exs. C & D, and for present purposes, the relevant request is that issued to NEIC seeking

5. Any other data or other material in NEIC's possession that were used, reviewed or considered in preparing the Agency's statements in the January 27, 1994, public press release or the February 1994 Palmerton Zinc Superfund Site "Superfund Update," or that

ments discovered in the search at NEIC, Horsehead sought disclosure, and on EPA's motion for partial reconsideration, this Court ruled in EPA's favor on its assertion of Exemption 6. *See Horsehead Indus., Inc. v. EPA,* No. 94–1299 (Order of Mar. 13, 1997).

for[m] [sic] the basis for the Agency's statements in these documents.

Amended Compl. Ex. C.

In response to the Court's Order, EPA ultimately filed two affidavits from Joe H. Lowry ("Lowry"), Senior Scientist at NEIC who, since July 1993, had been the principal person investigating the Palmerton Site. Nov. 5, 1996 Affidavit of Joe H. Lowry, Ph.D. ¶ 2. In the first affidavit, it appears that an EPA FOIA officer described Horsehead's request to Lowry without providing him a copy, and in the process the request was construed too narrowly. *See id.* ¶¶ 6–7. Subsequently, however, Lowry reviewed the request itself, and he continued to believe it did not seek underlying factual data supporting the draft NEIC report. *See* Dec. 6, 1996 Affidavit of Joe H. Lowry, Ph.D. ¶ 5.

As a result, while conceding that such underlying factual data would not be exempt under FOIA, EPA's counsel argued to the Court that Horsehead's FOIA request only sought data that was generated in connection with the preparation of the press release or the Superfund Update. Claiming that agency personnel did not use, review or consider any specific documents or data in creating and discussing the press release or the Superfund Update, EPA argued that the documents containing the underlying data were not subject to Horsehead's FOIA request. EPA stated: "To the contrary, these documents were based upon the *overall knowledge* of the analytical work done to date." EPA Mem. in Response at 4 (emphasis added).

This Court disagreed:

EPA's interpretation of the plaintiff's FOIA request is untenable. By construing the FOIA request narrowly, EPA seeks to avoid disclosing information that it concedes is subject to disclosure under FOIA..... Significantly, EPA does not claim that the "overall knowledge" obtained by agency personnel was not derived from the underlying factual data that the agency gathered regarding the Palmerton site, and it is this data that the plaintiffs sought in their request of February 18, 1994 (and which they continue to seek today).

January 1997 Opinion at 4 (footnote and citation omitted).

The Court then ordered that "any and all such factual data regarding the Palmerton site that were used, reviewed or considered by agency personnel to develop their 'overall knowledge of the analytical work done' are responsive and shall be disclosed." *Id.* at 5. Following resolution of a final point discussed in note 2, *supra,* the parties were directed to meet and confer regarding Horsehead's motion for fees and litigation costs. The parties were unable to resolve that issue, and left it to the Court to do so.

### DISCUSSION

In 1974, Congress amended the FOIA to provide courts with the discretion to award "reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." *See* Amendments to the Freedom of Information Act, Pub.L. No. 93–502, 88 Stat. 1561 (1974) *codified as* 5 U.S.C. § 552(a)(4)(E) (1994). That discretion "is best exercised by the court most closely associated with the case." *Nationwide Bldg. Maintenance, Inc. v. Sampson,* 559 F.2d 704, 716 (D.C.Cir.1977).

 A two-step analysis is required before a court awards fees. First, the court must determine whether the plaintiff is *eligible* for a fee award because it "substantially prevailed." If so, then the court must determine whether the plaintiff is *entitled* to a fee award by balancing at least four factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding the requested information. *Chesapeake Bay Found., Inc. v. United States Dep't of Agriculture,* 11 F.3d 211, 216 (D.C.Cir.1993) (hereafter "*Chesapeake Bay Found. I* ").

### A. Eligibility

 To show that it "substantially prevailed" in the FOIA litigation, Horsehead must demonstrate that the lawsuit was reasonably necessary to obtain the documents

**64**

sought and that the litigation substantially caused the requested records to be released. *See Chesapeake Bay Found. I.*, 11 F.3d at 216. EPA modestly protests that Horsehead is ineligible, but in light of the Court's January 1997 Opinion, EPA doth protest too much.

■ As a result of its lawsuit, Horsehead successfully forced disclosure of one appendix, with redactions, of the 1993 draft NEIC report. In addition, EPA turned over 10,000 pages of background data, which it claims "were never withheld or considered exempt in this lawsuit." Def.'s Fee Opp'n Mem. at 4. The only basis for EPA's argument that these documents were never withheld is its narrow construction of Horsehead's FOIA request, a construction that this Court has already rejected. January 1997 Opinion at 4. The Court finds that these documents were withheld and were produced only as a result of this Court's order. Thus, Horsehead substantially prevailed and is eligible for a fee award.

### B. Entitlement

Having determined eligibility, the Court must still give due consideration to the relevant factors that guide her discretion in making a fee award.

### 1. Whether the Government Has a Reasonable Basis for Withholding Records

The reasonableness of the Government's withholding documents often is considered as the last factor in evaluating a plaintiff's entitlement to a fee award, but because it is the only factor that is potentially dispositive, pru-

dence dictates that it should be considered first.

#### a. Legal Standard

■ Under this factor, where the agency's interpretation of its entitlement to withhold information is correct as a matter of law, even if it later allows a discretionary release of records, fees will not be awarded. *Cotton v. Heyman*, 63 F.3d 1115, 1117 (D.C.Cir. 1995); *Chesapeake Bay Found. I*, 11 F.3d at 216.

■ In cases where the agency erroneously interprets the law, its withholding will be considered reasonable if its. interpretation had a colorable basis in law, and that is to be considered along with the other factors. *Chesapeake Bay Found. I*, 11 F.3d at 216; *Fenster v. Brown*, 617 F.2d 740, 742–43 & n. 4 (D.C.Cir.1979); *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365–66 (D.C.Cir.1977).

■ Where the Government has unreasonably withheld records, a fee award is appropriate if the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *See Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1097 (D.C.Cir.1992) (citations omitted); *Cazalas v. United States Dep't of Justice*, 709 F.2d 1051, 1054 (5th Cir.1983); *Matlack, Inc. v. United States Environmental Protection Agency*, 868 F.Supp. 627, 632 (D.Del.1994).

Some courts seem to suggest that a finding of unreasonable withholding alone is dispositive in favor of awarding attorneys' fees.[3]

**3.** The Sixth Circuit has suggested that in practice unreasonable withholding by itself is dispositive. *See American Commercial Barge Lines Co. v. National Labor Relations Board*, 758 F.2d 1109, 1111 (6th Cir.1985); *Seegull Manufacturing Co. v. National Labor Relations Board*, 741 F.2d 882, 885–86 (6th Cir.1984). The Tenth Circuit may also share this view. *See Anderson v. Secretary of Health and Human Services*, 80 F.3d 1500, 1505 (10th Cir.1996) (where plaintiff's FOIA request is motivated by private interest, attorneys' fees should be awarded "only upon a record which reveals a clear and positive public benefit or when government representatives have withheld information without any reasonable or colorable basis in the law") (internal quotation and citation

omitted). *But see Nationwide*, 559 F.2d at 712 n. 34.

In *Nationwide*, the Government argued that a finding of unreasonable withholding should be a prerequisite for even considering a fee award. The *Nationwide* court did not adopt that approach, but it certainly did not endorse the converse—that a finding of unreasonable withholding by itself mandates a fee award. *See id.*

Other courts appear to suggest that a finding of unreasonable withholding combined with a showing of bad faith would be dispositive. *See, e.g., Solone v. Internal Revenue Serv.*, 830 F.Supp. 1141, 1143 (N.D.Ill.1993) (agency was dilatory but not seeking to avoid embarrassment or harass complainant); *Simon v. United States*, 587

This Court does not adopt that view. The precedent from this Circuit, the legislative history, and the weight of the case law suggest that all four factors are to be considered and—depending on the facts of the case—even when a court finds that the Government has unreasonably withheld documents, it may still decline to award attorneys' fees to the plaintiff.[4]

### b. Whether EPA's Withholding Was Unreasonable

In the instant case, the reasonable-basis factor must be applied both to EPA's withholding Appendix III from the draft report and to its withhholding the 10,000+ pages of data that it claimed were not encompassed by Horsehead's FOIA request.

### i. Appendix III

■ As to Appendix III of the 1993 draft NEIC report, the inquiry is the standard one: did EPA reasonably believe that the Appendix was exempt from disclosure? The answer is no. As is set forth more fully in the Court's October 1996 Opinion, EPA was obliged to disclose those records containing purely factual information that were reasonably segregable from the remainder of the draft report. *See also Lurie v. Department of the Army*, 970 F.Supp. 19, 34 (D.D.C.1997) ("The agency is required to make a 'segregability' determination ...stating that 'all reasonably segregable' non-exempt (i.e., factual) information has been disclosed to a requester unless the 'nonexempt portions of a docu-

ment ... are inextricably intertwined with exempt portions.' ") (citations omitted). Having determined that all but three sentences of the Appendix were segregable, factual information subject to disclosure, the Court stated that "it would be a stretch indeed to contend that this information was inextricably linked to policy judgments." October 1996 Opinion at 18.

To be sure, EPA had a reasonable, indeed correct, basis for resisting disclosure of the majority of the documents discussed in the October 1996 Opinion, but EPA's failure to perform the separability analysis and treat the Appendix as segregable and subject to disclosure lacked a colorable basis in law. Nonetheless, while EPA could have parsed its draft report more finely, the withholding of the Appendix is not the kind of recalcitrant or obdurate behavior that this factor is designed to weed out. The unreasonable withholding of the Appendix tips this factor only slightly in favor of a fee award.

### ii. Factual Data Related to Palmerton Site

Consideration under this factor is more nuanced with respect to EPA's withholding more than 10,000 pages of documents that undisputedly do not fall within any FOIA exemption. The reasonable-basis inquiry generally is stated as whether the agency has a reasonable basis in law to withhold the requested records. *E .g., Chesapeake Bay Found. I*, 11 F.3d at 216. In most cases, this factor involves the agency's interpretation of

---

F.Supp. 1029, 1032 (D.D.C.1984) ("without evidence of bad faith, the court declines to impose a fee award to sanction [a] sluggish agency response").

4. In this Circuit, see *Chesapeake Bay Found., Inc. v. Dep't of Agriculture*, 108 F.3d 375, 376–77 (D.C.Cir.1997) (hereafter *"Chesapeake Bay Found. II "); Church of Scientology of California v. Harris*, 653 F.2d 584, 590–91 (D.C.Cir.1981) ("[t]he propriety of the government's conduct is but one variable in the section 552(a)(4)(E) equation" and all relevant factors are to be considered); *Fenster*, 617 F.2d at 742–43 & n. 4; *Nationwide*, 559 F.2d at 714 (extensively reviewing the legislative history, concluding that "courts should consider the four factors ... although they must be careful not to give any particular factor dispositive weight"); *Cuneo*, 553 F.2d at 1365–66; *see also Ralph Hoar & Assoc. v. National Highway Traffic Safety Admin.*, 985

F.Supp. 1, 9 (D.D.C.1997) (finding no reasonable basis for withholding and weighing that along with other factors).

In other Circuits, see *United Assoc. of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 598 v. Department of the Army*, 841 F.2d 1459, 1463–64 (9th Cir.1988) (withholding was unreasonable but remanded so that district court could weigh that against other factors); *Miller v. United States Dep't of State*, 779 F.2d 1378, 1389–90 (8th Cir.1985) (finding unreasonable withholding and weighing it along with other factors); *Cazalas*, 709 F.2d at 1054–55 (same); *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir.1978) ("it is clear that all four criteria are to be weighed as guides to the court's discretion in FOIA attorneys' fees awards"); *Matlack*, 868 F.Supp. at 633–34 (finding EPA to have lacked a reasonable basis for withholding but refusing to grant a fee award nonetheless).

one or more of the nine FOIA exemptions, *see id.*, but in some cases, the factor has been applied more broadly. *See Cotton,* 63 F.3d at 1121. In *Cotton,* our Court of Appeals applied the reasonable-basis inquiry to the Smithsonian Institution's interpretation of the FOIA's definition of an "agency," and found that interpretation to have been reasonable. *Id.*

■ In this case, the reasonable-basis inquiry is focused on whether EPA reasonably believed that these documents fell outside the ambit of Horsehead's FOIA request. This inquiry also involves an interpretation of law in that EPA was obliged to look to the rules of construction for FOIA requests. The rule is simple: "The agency [is] bound to read [a FOIA request] as drafted, not as either agency officials or [complainant] might wish it was drafted." *Miller v. Casey,* 730 F.2d 773, 777 (D.C.Cir.1984). And, as this Court has explained, "the agency must be careful not to read the request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester." *Hemenway v. Hughes,* 601 F.Supp. 1002, 1005 (D.D.C.1985). Thus, the function of the reasonable-basis inquiry is to evaluate whether the agency had a reasonable basis for withholding the information, whether that basis be because the agency reasonably believed the records to have been requested but exempt from disclosure or not requested at all.

EPA withheld more than 10,000 pages of data, arguing that these documents were "based upon the overall knowledge of the analytical work done to date" rather than linked to the press release or Superfund Update cited in the request. January 1997 Opinion at 3. This Court found that reading to be "untenable." *Id.* Closer inspection is required to determine whether that untenable reading amounted to an unreasonable withholding of the records.

### EPA's Withholding Was Not Done in Bad Faith

■ No evidence in the record suggests that EPA's narrow construction was the result of an effort to thwart Horsehead. The text of Horsehead's request focuses on documents used or relied upon with respect to the press release and the draft 1993 NEIC report. It is only the last sentence of the request, which asks for the data that "for[ms] the basis" for the statements made in the press release and draft report, that broadens the request to include these documents.

The evidence suggests that, at least initially, the EPA FOIA officer did not properly relay the final, broadening sentence of the request to Lowry. Even after he read the request, his interpretation rested on the first part of the request, and he failed to consider the complete request. This Court cannot find that EPA's narrow construction of Horsehead's FOIA request rises to the level of bad faith. *Cf. Knight v. Food and Drug Admin.,* 1996 WL 707020 \*2 (D.Kan. Nov.26, 1996) ("The FDA's delay in responding to Knight's FOIA requests and then its narrow construction of Knight's second request simply do not sustain an inference of bad faith.").

### EPA Was Neither Recalcitrant Nor Obdurate

The Court similarly cannot find that EPA was recalcitrant or obdurate in its opposition to Horsehead's requests.[5] As this Court previously ruled, EPA had a legally correct basis for resisting disclosure of most of the documents discussed in the October 1996 Opinion. The narrow construction of one request does not evidence a stubborn resistance to the dictates of the FOIA. Rather EPA's defense of its narrow construction of the FOIA request evidences the kind of sharp practice that the Court has had occasion to witness among private civil litigants responding to discovery requests propounded under the Federal Rules of Civil Procedure. That is not entirely surprising in the context of this FOIA request, submitted as it was, by

---

**5.** "Recalcitrant" means "Stubbornly resistant to authority, domination, or guidance." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 981 (1994). "Obdurate" means "Persistent in wrongdoing" or "Not yielding to persuasion." *Id.* at 809. This effectively sets out a "stubbornness" or "mulishness" standard for assessing whether fees are appropriate under this factor.

the attorney for a corporation that EPA had designated as a Potentially Responsible Party (PRP) for the clean-up of a Superfund site. It is quite likely that EPA viewed Horsehead's FOIA request as a pre-litigation discovery request, which some FOIA requests undoubtedly are.[6]

### Nonetheless, EPA's Withholding Was Unreasonable

██ But the fact that a FOIA request is made by a potentially adverse party in civil litigation does not provide a reasonable basis for the Government to read such requests more narrowly than others. It is true that one occasionally finds evidence of judicial disapproval when FOIA requests have been used in lieu of discovery.[7] There is, however, no legal basis for such commentary. On the contrary, Congress clearly recognized that the FOIA would be used as a means of obtaining discovery from the Government and, significantly, in such cases attorneys' fees would not ordinarily be awarded. *Nationwide*, 559 F.2d at 712 (court "would not award fees if a business was using the FOIA ... as a substitute for discovery in private litigation with the government") (quoting S.Rep. No. 93–854, 93d Cong., 2d Sess. (1974)). Congress certainly did not enact the FOIA to benefit civil litigants, but it also did not authorize the Government to discriminate against FOIA requests made by such litigants. *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 148–49, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *United*

*Technologies Corp. v. Federal Aviation Admin.*, 102 F.3d 688, 690–91 (2d Cir.1996) (Oberdorfer, J., sitting by designation).

On the contrary, the FOIA confers on members of the public a right to information from the Government independent of the contextually-based right provided by Rule 26 of the Federal Rules of Civil Procedure. *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151–52, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). Although there are occasional comparisons, particularly with respect to the scope of Exemption 5, the FOIA is animated by different policies than those informing the rules governing civil discovery in the federal courts. *See Baldridge v. Shapiro*, 455 U.S. 345, 360, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982).

Unlike Rule 26, the FOIA is founded on an equality principle or non-discrimination principle that makes irrelevant, with one exception, the identity of requester or her particular interest in the information sought.[8] Thus, all members of the public, including those who happen to be parties litigant against their government, are entitled to access to government records subject to disclosure under FOIA. Those litigating against the Government may not use the FOIA to circumvent limitations placed on discovery by, for example, obtaining otherwise privileged material, *e.g.*, *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 801–02, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984), but such

---

**6.** *See, e.g., Cotton*, 63 F.3d at 1116 (request to Smithsonian Institution to prepare an employment discrimination suit); *Cazalas*, 709 F.2d at 1052 (FOIA request by former Assistant United States Attorney who filed employment discrimination complaints); *Chamberlain v. Kurtz*, 589 F.2d 827, 831–32 (5th Cir.1979) (request by subject of civil and criminal tax fraud investigation to prepare his defense); *Matlack*, 868 F.Supp. at 632 (request to aid in fight of designation as PRP for Superfund Site); *Solone*, 830 F.Supp. at 1143 (request to prepare defense against IRS action); *Hill Tower, Inc. v. Department of the Navy*, 718 F.Supp. 568, 572 (N.D.Tex.1989) (request to aid in Federal Tort Claims Act litigation).

**7.** *See Pederson v. Resolution Trust Corp.*, 847 F.Supp. 851, 856 (D.Colo.1994) ("The FOIA is not to be used as a discovery tool."); *Simon*, 587 F.Supp. at 1033 (use of FOIA request in lieu of discovery "not proper").

**8.** *See Federal Open Market Comm. of the Federal Reserve Sys. v. Merrill*, 443 U.S. 340, 362–63, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979); *Sears*, 421 U.S. at 148–49; *In re Sealed Case*, 121 F.3d 729, 737 n. 5 (D.C.Cir.1997); *Maricopa Audubon Soc'y v. United States Forest Serv.*, 108 F.3d 1082, 1088 (9th Cir.1997) ("the FOIA does not permit selective disclosure of information only to certain parties").

In the one, limited, exception to the non-discrimination principle, the Court held that prisoners are entitled to receive copies of their presentence investigation reports through FOIA requests even though other members of the public would not enjoy similar access to those records under the FOIA. *United States Dep't of Justice v. Julian*, 486 U.S. 1, 12–13, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988) (implying a limitation on Exemption 5 in this circumstance).

requesters also are not to be denied equal access to government records.

In theory, it should be enough to declare, as Congress has done, that all members of the public share an equal right to access to government records. In practice, however, agencies retain significant discretion when interpreting either FOIA requests or requests for discovery in civil litigation. To avoid frustration of the FOIA, agency personnel are obliged to read a FOIA request somewhat more generously than they might read an identically-worded discovery request. This holds true *even if the FOIA request is made by an adverse party or a potentially adverse party in litigation against the Government.* A FOIA request is made in a non-adversarial proceeding in which the requester must simply "reasonably describe" the records, 5 U.S.C. § 552(a)(3)(A); whereas, civil litigants understand from the adversarial nature of a civil action that their requests for documents will be read narrowly, and they are under the more stringent burden to describe the documents sought with "reasonable particularity." *See* Fed.R.Civ.P. 34(b).

■ Therefore, when a FOIA request is made to further a complainant's litigation objectives against the government, an agency may not discriminate and construe such a request more narrowly, as if, perhaps, the request been made pursuant to the Federal Rules of Civil Procedure, than a request made by a non-litigant complainant. The current Administration's policy regarding FOIA requests reinforces the point.[9]

Against this backdrop, the Court finds that EPA lacked a reasonable basis for withholding the 10,000 pages of data as well. It is possible, although doubtful, that EPA's narrow construction of Horsehead's request may have passed muster under Rule 34, but it certainly does not under the FOIA. Reasonably interpreted, Horsehead's FOIA request included the documents disclosed in response to the Court's January 3, 1997 Order.

On the one hand, the Court is less than pleased with EPA, which should have acknowledged its mistake forthrightly rather than attempt to defend an indefensible reading of Horsehead's request. On the other hand, the FOIA request certainly could have been written more clearly, and once the Court instructed the agency on the proper reading of the request, the documents at issue were identified and disclosed promptly and without resistance or need for further litigation. *See Fenster,* 617 F.2d at 742 n. 4 (quoting legislative history to the effect that court should consider whether complainant was forced to resort to further litigation under this factor).

Therefore, upon consideration, the Court finds that EPA lacked a reasonable basis for withholding both Appendix III of the draft 1993 NEIC report and the 10,000 pages of data that it erroneously considered not to have been the subject of Horsehead's FOIA request. While this factor weighs in favor of a fee award, the Court finds that it must be balanced against the other factors; EPA's behavior here simply was not mulish enough to require slapping on it the costs of Horsehead's attorneys' fees without consideration of the other factors.

## 2. Benefit of the Litigation to the Public

■ Because the FOIA was enacted to provide the public with access to government records, an important factor in assessing whether an award of attorneys' fees is appropriate is the benefit to the public of the complainant's success. To gauge this benefit, the Court considers, with reference to the specific documents at issue in the case at hand, whether plaintiffs' victory is likely to add to the fund of information that citizens may use in making vital political choices. *See Cotton,* 63 F.3d at 1120. The inquiry is furthered by considering the likely degree of dissemination and the public impact that can be expected from a particular disclosure, *Blue,* 570 F.2d at 533, but it is the benefit that derives from the litigation not simply

---

**9.** *See* President Clinton's FOIA Memorandum of October 1993, *reprinted in FOIA Update,* at 1 (Summer/Fall 1993); Attorney General Reno's Memorandum for Heads of Departments and Agencies regarding the Freedom of Information Act (Oct. 4, 1993), *reprinted in FOIA Update,* at 4–5 (Summer/Fall 1993). *See generally* U.S. Dep't of Justice, *Freedom of Information Act Guide & Privacy Act Overview* 11–12 (1996).

the request that is considered. *See Chesapeake Bay Found. II v. Department of Agriculture,* 108 F.3d 375, 377 (D.C.Cir.1997).

 Here, the information released is data pertaining to hazardous substances found at a Superfund site. Horsehead claims that there is a substantial public benefit from the release because citizens in the affected community want to know more about the sources of the hazardous substances. However, there is no suggestion in the record that any person or entity other than Horsehead has an interest in the data itself; rather Horsehead claims that a substantial public benefit will result from the release of its self-interested interpretation of the data.[10] Further, the likelihood that the data will be disseminated at all remains speculative. Therefore, the conclusion must be that the public benefit from the release is minimal and weighs against an award of fees. *See Matlack,* 868 F.Supp. at 632 (release of similar data to party that could be liable for clean-up of Superfund site yields minimal public benefit); *cf. Chesapeake Bay Found. II,* 108 F.3d at 377; *Northwest Coalition for Alternatives to Pesticides v. Browner,* 965 F.Supp. 59, 63–64 (D.D.C.1997).

### 3. Commercial Benefit to Horsehead and the Nature of Horsehead's Interest

 Although set out as separate factors, the commercial benefit of the disclosure to a FOIA complainant and the nature of the complainant's interest in the records are routinely merged for consideration. *See Cotton,* 63 F.3d at 1120. The functional inquiry under these factors is to assess the probability that the complainant had sufficient private incentive and means to seek disclosure of the records regardless of the availability of fees. *Tax Analysts,* 965 F.2d at 1096. Where the purpose of a FOIA suit is to advance the private commercial interest of the complainant, there will seldom be a fee award. *Id.; see also Fenster,* 617 F.2d at 742 & n. 4 (quoting relevant legislative history to the same effect).

 Extensive discussion under this factor is unwarranted because plaintiffs concede that "Horsehead obviously has a commercial interest in obtaining the records." Pls. Fee Mem. at 8. There is little question from the record that Horsehead brought this suit to advance its private, commercial interest and that it would have brought the suit regardless of the availability of fees. With respect to these factors, this is precisely the kind of case in which an award of attorneys' fees would serve as an inappropriate windfall. As a result, these combined factors weigh very heavily against a fee award. *See Cotton,* 63 F.3d at 1120; *Matlack,* 868 F.Supp. at 632 (commercial interest weighing against fee award where plaintiff's "underlying incentive to engage in this FOIA litigation was to evaluate the possibility of avoiding liability for the clean-up of the Site").

### *CONCLUSION*

Upon careful consideration, the Court finds that Horsehead is eligible for an award of attorneys' fees under FOIA, but that under the unique circumstances of this case, Horsehead is not entitled to a fee award. EPA's narrow construction of one of Horsehead's FOIA requests was unreasonable but insufficiently recalcitrant or obdurate to outweigh the other factors, all of which weigh more heavily against an award of attorneys' fees and litigation costs. EPA reasonably withheld a number of documents, and Horsehead successfully obtained additional ammunition for its potential dispute with EPA over the clean-up of the Palmerton site. It is appropriate that the parties bear their own costs. Accordingly, it is hereby

**ORDERED** that Horsehead's Motion for an Award of Attorneys' Fees and Costs of Litigation shall be, and hereby is, DENIED.

IT IS SO ORDERED.

---

**10.** *See* Pls. Fee Mem. at 8. Throughout its brief, Horsehead repeatedly argues the merits of its

defense to CERCLA liability to this Court, as if that were relevant to the fees issue pending.