**CHESAPEAKE BAY FOUNDATION, INC., Appellee,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Appellant.**

**No. 92–5174.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 18, 1993.

Decided Dec. 28, 1993.

Rehearing and Suggestion for Rehearing In Banc * Denied March 11, 1994.

* Silberman, Circuit Judge, did not participate in this matter.

Charles F. Flynn, Asst. U.S. Atty., Washington, DC, argued the cause for appellant. With him on the briefs were J. Ramsey Johnson, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, DC.

Gregory L. Poe, Washington, DC, argued the cause for appellee. With him on the brief were Mitchell Rogovin and Randal S. Milch, Washington, DC.

Before: WALD, EDWARDS, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The Chesapeake Bay Foundation, Inc. ("CBF"), is a not-for-profit corporation whose principal goal is to pursue projects designed to restore and maintain the biological integrity of the Chesapeake Bay and its living resources. In 1988, in furtherance of its conservation mission, CBF sought data on public pesticide use in the state of Maryland. Upon determining that data concerning pesticide use by Maryland state agencies were unavailable to the public, CBF turned to the United States Department of Agriculture ("USDA") for the information. It appears

that USDA possessed raw data on Maryland pesticide use obtained through informational surveys submitted to the Federal Government by Maryland state agencies.

Initially, CBF made an informal request for release of the survey data. Officials at USDA responded that they could not release the data because the agency was prohibited by statute from publicly disclosing records that would identify the "person" who had supplied the information. *See* 7 U.S.C. § 2276(a) (1988). However, USDA officials offered to seek waivers from the state agencies that had provided the survey data if CBF would pay the postage to mail the waiver requests. CBF then filed a formal request for the data under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E) (1988). This FOIA request was denied by USDA on the grounds that the information sought could not be released without waivers, which USDA again offered to seek if CBF would pay the postage.

CBF refused USDA's offers to seek waivers and instead filed a lawsuit to compel the federal agency to release the pesticide data. Without deciding whether CBF was legally entitled to the information, the District Judge urged the parties to seek state agency waivers so as to avoid a trial on the merits. *See* Trial Transcript, *reprinted in* Joint Appendix ("J.A.") 37–39. The trial judge then issued an order to the Maryland agencies, requiring state officials to appear in court to raise any objections they might have to USDA's release of the pesticide data. Although the trial judge never explained the basis for his "orders" to state agencies that were not parties to the lawsuit, the solution adopted by the court essentially mirrored USDA's pre-litigation suggestion that waivers be sought. Thus, USDA was required to do nothing more than what it had proposed to do before the lawsuit was filed; and, eventually, all the Maryland agencies waived their confidentiality interests and CBF received the documents. The case was dismissed and the District Court awarded $44,373.07 in attorneys' fees to CBF for having "substantially prevailed" in obtaining release of the requested documents. *See Chesapeake Bay Found., Inc. v. United States Dep't of Agriculture,* 785 F.Supp. 1030, 1033 (D.D.C.1992).

USDA appeals from the District Court's judgment awarding fees. USDA argues that CBF is not entitled to fees because USDA had a reasonable basis in law for withholding the records CBF sought, and because USDA cooperated in devising a means whereby CBF got what it wanted without compromising USDA's view that section 2276(a) of title 7 prohibited nonconsensual release of these records. We agree with USDA that it had a reasonable basis in law for withholding these records. Because the District Court failed properly to weigh this consideration before deciding whether CBF was entitled to attorneys' fees, we reverse and remand for further consideration.

## I. BACKGROUND

CBF brought this lawsuit under FOIA to obtain data held by USDA. According to CBF, data concerning pesticide use by Maryland state agencies were unavailable to the public in 1988. *See* Affidavit of Patrick H. Gardner, *reprinted in* J.A. 95. USDA, however, possessed raw data that these agencies had voluntarily provided to the Federal Government concerning their pesticide use. Consequently, CBF sought this information directly from USDA.

The disputed data was collected by USDA through survey forms mailed to Maryland pesticide users, including Maryland public agencies. Trial Transcript, J.A. 17. USDA collected this data under a promise of confidentiality rooted in 7 U.S.C. § 2276(a). That section dictates that information that has been provided in a survey may not be:

(1) use[d] ... for a purpose other than the development or reporting of aggregate data in a manner such that the identity of the person who supplied such information is not discernable and is not material to the intended uses of such information; or

(2) disclose[d] ... to the public, unless such information has been transformed into a statistical or aggregate form that does not allow the identification of the person who supplied particular information.

7 U.S.C. § 2276(a) (1988). USDA has consistently maintained that section 2276(a) shields information provided by *both* public and private survey respondents, and that 5 U.S.C. § 552(b)(3) ("Exemption 3"), which provides that agency records are properly withheld if they are specifically exempted from disclosure by statute, thus prevents release of such records under FOIA.

Initially, in June 1988, CBF informally requested that USDA release the public agency survey data, but USDA declined to oblige. In July 1988, CBF made a formal FOIA request for "[a]ll unpublished data provided by 129 Maryland public agencies to the National Agricultural Statistics Service ['NASS'] for the compilation of 'Maryland Pesticides Statistics for 1985.'" Letter of Patrick Gardner (Jul. 22, 1988), *reprinted in* J.A. 9. That request was denied by the Economics Agencies FOIA Officer on August 8, 1988. CBF administratively appealed the denial to NASS on September 21, 1988, and NASS denied that appeal on October 31, 1988, informing CBF that it had the right to judicial review. The June 1988 informal denial and the August 1988 FOIA denial were accompanied by USDA's offer "to obtain individual releases for the survey response forms.... [and] to absorb the administrative costs of contacting the 129 public agencies if Chesapeake Bay Foundation pays the postal costs." *See, e.g.,* Letter from Charles E. Caudill to Patrick Gardner (Aug. 8, 1988), *reprinted in* J.A. 11. CBF officials did not respond to USDA's offers to seek waivers, apparently believing that the "non-FOIA procedure offered by USDA was unfounded." Affidavit of Patrick H. Gardner, J.A. 96, 98. Accordingly, CBF elected to pursue the pesticide data through litigation.

On July 11, 1989, CBF filed a civil action to obtain the survey data. The parties filed cross-motions for summary judgment, addressing the issues raised under 7 U.S.C. § 2276(a). USDA argued that the survey data were obtained pursuant to promises of confidentiality, thus the information sought was protected from disclosure. Trial Transcript, J.A. 24–37. CBF argued that state agencies were not "persons" within the meaning of section 2276(a), so USDA could not withhold disclosure of the survey data under FOIA Exemption 3. *Id.* at J.A. 18–19.

At the status call on the motions, the District Judge questioned whether "anybody [had] asked the state whether they would be willing to cough ... up" the survey data. *Id.* at J.A. 26. USDA explained that it had offered to seek state waivers, but CBF had declined. The District Judge then postponed consideration of the merits of the case and adopted a procedure similar to that originally proposed by USDA:

> THE COURT: Let me tell you how we'll handle this thing.... I'm going to say the information will be disclosed within 60 days unless [the state agencies] object.

> . . . . .

> THE COURT: I'm saying I give you an order that says that this information will be ordered to be turned over under the FOIA and that if you have any objection to that being turned over that you should submit it to the United States District Court within 60 days. Then when we come back in 60 days, we'll look at it. And if it is not there, we turn it over.

> With respect to those who don't want it turned over, let's bring them in and find out what the problem is.

Trial Transcript, J.A. 40, 42.

The Government's counsel then expressed her concern that the District Judge appeared to be proposing to release the survey forms without regard to 7 U.S.C. § 2276(a). In other words, counsel pointed out that the state agencies were under no obligation to justify claims of confidentiality. Government counsel noted further that the state agencies were not parties to the action, and that the District Court was not in a position to adjudicate their rights. *Id.* at J.A. 41, 42. She insisted that unless the agencies waived their interests in the confidentiality of the data, the District Court could not order release of the information without addressing FOIA Exemption 3. The trial judge then appeared to assure counsel that he would not compel involuntary release of the data without an adjudication on the merits:

> MS. CURRENT: It sounds like from what I understood, Your Honor, that

you're going to issue an order that orders us to turn this over in 60 days if the state hasn't objected. And I see that as being materially different than what we offered to do.

THE COURT: What's the difference? The state has to come—if they object, then I have to adjudicate to see what their problem is. But why is that much different than what you offered?

MS. CURRENT: If what you're saying, Your Honor, is at the end of the 60 days, you will then adjudicate the propriety of withholding it, I don't think we have an objection to that.

Trial Transcript, J.A. 44.

The District Court entered an order directing the Attorney General of Maryland, and the individual state agencies, to file any objections to the release of the survey information in writing and to appear for a hearing on any objections. March 26, 1990 Order, *reprinted in* J.A. 66–67. The District Court expressly preserved "USDA's right to be further heard on any aspect of [the] matter." *Id.* In compliance with the District Judge's order, USDA wrote the Maryland Attorney General and the interested Maryland agencies, explaining the litigation and enclosing a copy of the order. In the letter, USDA's counsel invited the agencies to execute an enclosed written authorization for release of the information, but assured the state and local officials that USDA would continue to resist disclosure in the event the State or its agencies opposed release of the survey information. *See* Letter of Kenneth E. Cohen (Apr. 18, 1990), *reprinted in* J.A. 81.

Subsequently, the Maryland Attorney General's office filed reports with the District Court concerning the state agency responses. At a status call on September 4, 1990, on the basis of the waivers that had been received, USDA announced its intention to release the survey forms of all but one state agency. The exception was the Department of Parks of Wicomico County, which refused to authorize release of its survey data. *See* Letter of Klaus H. Meyer (Jun. 11, 1990), *reprinted in* J.A. 83. When CBF pressed for the data from Wicomico, the District Judge issued an order on November 26, 1990 requiring the

state agency to "show cause why . . . [USDA] should not release the 1985 Wicomico County USDA pesticide survey form. . . ." November 26, 1990 Order, *reprinted in* J.A. 94. At a December 12, 1990 status call, the District Court announced that it had received two letters from the Wicomico County authorities, saying that the County would produce the survey form if it received a proper request under the Maryland Freedom of Information Act, or if the District Court should so order. CBF made a written request to Wicomico County and obtained the survey form. In a praecipe filed December 21, 1990, CBF informed the trial court that no issues remained to be resolved with respect to the information sought by CBF in the Complaint.

CBF then requested attorneys' fees and costs as a "prevailing party" under FOIA. *See* 5 U.S.C. § 552(a)(4)(E) (1988). The Government opposed, insisting that CBF was neither eligible nor entitled to an award. The District Judge allowed that he had not decided the substantive FOIA issues that had been presented by the parties. Trial Transcript, J.A. 125, 127. Nonetheless, he granted CBF's application for fees, stating:

> [W]hat happened here is the plaintiffs by whatever means were successful. They would not have been successful if they had not brought the lawsuit. It's that simple. . . . [I]ndeed, they would not have been successful unless the Court had issued an order to show cause. . . . It wasn't a compromise.

*Id.* at J.A. 129. The District Court awarded attorneys' fees and costs in the amount of $44,373.07, finding CBF entitled to an award because "[t]he entire public benefits when it has information regarding the use or nonuse of potentially harmful chemicals." 785 F.Supp. at 1033. The District Court made no finding as to whether USDA's basis for withholding the data was reasonable.

## II. DISCUSSION

 The Freedom of Information Act provides for the recovery of attorneys' fees in cases brought under its provisions where the complainant has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E) (1988). To determine whether to award fees, the District Court

must conduct a two-part analysis. *Weisberg v. United States Dep't of Justice*, 848 F.2d 1265, 1268 (D.C.Cir.1988). First, it must determine whether the party requesting fees is eligible for them. *Id.* "Eligibility" concerns whether a party has "substantially prevailed" as required by section 552(a)(4)(E) of FOIA. Under established case law, a party is eligible for attorneys' fees when it is shown that the lawsuit was (1) reasonably necessary and (2) that the litigation substantially caused the requested records to be released. *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 513 (2d Cir.1976). USDA argues that CBF failed to prove that it was eligible for fees. We are unpersuaded, however. CBF not unreasonably believed that the survey data would not be unconditionally released absent a lawsuit, *see Fund for Constitutional Gov't v. National Archives & Records*, 656 F.2d 856, 872 (D.C.Cir.1981) (reasonable necessity determined from the perspective of a reasonable person in the position of the requester), and the lawsuit did in fact cause the release of the data by deploying the power of the court to encourage reluctant agencies to waive their confidentiality interests.

■ Second, the court must determine whether a party is entitled to fees. Eligibility for fees does not guarantee entitlement. *See Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C.Cir.1977); *see also Fund for Constitutional Gov't*, 656 F.2d at 872 (the District Court must examine whether the prevailing party is entitled to fees under FOIA). There are at least four considerations to be weighed by the court in determining whether an *eligible* FOIA litigant is also *entitled* to attorneys' fees: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information. *Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1093 (D.C.Cir.1992) (citing *Weisberg v. United States Dept. of Justice*, 745 F.2d 1476, 1498) (D.C.Cir.1984). In the present case, the District Court completely failed to consider the fourth factor in deciding whether CBF was entitled to attorneys' fees. It is for this reason that the judgment of the trial court cannot stand and the case must be remanded for further consideration.

■ Certain points need to be clarified with respect to the scope of the District Court's reconsideration on remand. For one thing, although the test of entitlement involves a balance of several factors, *see LaSalle Extension Univ. v. F.T.C.*, 627 F.2d 481, 484 (D.C.Cir.1980); *Nationwide Bldg. Maintenance, Inc. v. Sampson*, 559 F.2d 704, 714 (D.C.Cir.1977), there can be no doubt that a party is not entitled to fees if the Government's legal basis for withholding requested records is correct. *See id.* at 712 n. 34 ("Certainly where the government can show that information disclosed after initial resistance was nonetheless exempt from the FOIA a plaintiff should not be awarded attorney fees under section 552(a)(4)(E)."); *cf. Charles River Park "A", Inc. v. Department of Hous. & Urban Dev.*, 519 F.2d 935, 942 (D.C.Cir.1975) ("[I]f the disclosure of the information involved ... would constitute a violation of a criminal statute, it would be an abuse of discretion for an agency to ignore such a statutory mandate and release the information."). Thus, in a case such as this one, in which the Government continues to insist that it had a valid basis for withholding requested documents, the District Court must determine whether the Government's position is legally correct in assessing any claim for fees under FOIA. In such a situation, it does not matter that information was disclosed after initial resistance, for this does not dispose of the question whether the information sought was exempt from disclosure under FOIA. *See Nationwide Bldg. Maintenance, Inc.*, 559 F.2d at 712 n. 34. If the Government was right in claiming that the data were exempt from disclosure under FOIA, then no fees are recoverable.

■ Further, in any event, the Government need only have "a colorable basis in law" for the court to consider the "reasonable basis in law" factor in determining a FOIA plaintiff's entitlement to attorneys' fees. *Nationwide Bldg. Maintenance, Inc.*, 559 F.2d at 712 (quoting S.Rep. No. 854, 93d Cong., 2d Sess. 19 (1974)). If the Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus.

In the instant case, it is clear that USDA's basis for withholding the survey data was reasonable. On its face, section 2276(a) supports the Government's claim that the information could not be released without waivers, and section 2276(c) indicates that USDA officials might have been subject to criminal penalties if they had wrongfully disclosed the documents at issue. Indeed, CBF concedes that USDA's legal argument is reasonable. Brief for Appellee at 28. Thus, on remand, the issue of the *reasonableness* of the Government's position is not open to question.

Rather, because the Government did not waver in its legal position, the District Court must either disallow fees, premised on the reasonableness of the position weighed along with the other considerations relevant to the entitlement calculus; or the court must decide whether the Government's position is legally correct—for, if so, this will be dispositive of the case. If the District Court reaches the merits of the Government's position, and holds it is incorrect, then the court still must weigh the concededly reasonable legal position along with the other factors to determine whether CBF is entitled to fees. We feel that it is appropriate for the District Court to entertain these questions in the first instance on remand.

Finally, we reject the finding of the trial judge that Government counsel and USDA officials were guilty of obdurate conduct. This finding has no support in the record, and it surely does not in any way justify an award of fees in favor of CBF. The Government's resistance to release of the disputed documents was grounded on a reasonable (and likely correct) reading of governing statutes. Even after concluding that they had no obligation to release the documents, USDA officials still offered to seek waivers from state agencies to accommodate CBF. USDA representatives were no less reasonable following CBF's initiation of this lawsuit. When the trial judge initially suggested that he might force the release of the data without a hearing on the merits (or pursuant to an ad hoc procedure that would affect state agencies that were not parties to the lawsuit), Government counsel wisely objected. But when the trial judge made it clear that he would allow a hearing on the merits if waivers could not be obtained from the state agencies, USDA representatives cooperated without further objection. And the solution implemented by the trial court—to seek waivers from the state agencies—was nothing more than what had been proposed by USDA representatives long before litigation was commenced. In light of this record, it cannot be found that Government officials were guilty of obdurate conduct.

### III. Conclusion

For the reasons stated above, the judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*