**Louis J. BLAZY, Appellant,**

v.

**George J. TENET, Director, Central Intelligence Agency, et al., Appellees.**

**No. 98–5232.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 7, 1999.

Decided Oct. 26, 1999.

---

Mitchell J. Matorin, appointed by the court as amicus curiae, argued the cause on the side of appellant. With him on the briefs was Mark A. Srere.

Louis J. Blazy, appearing pro se, was on the briefs for appellant.

Marina Utgoff Braswell, Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney. Edith S. Marshall, Assistant U.S. Attorney, entered an appearance.

Before: EDWARDS, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

Opinion concurring in part and concurring in the result filed by Circuit Judge SENTELLE.

HARRY T. EDWARDS, Chief Judge:

Louis J. Blazy, *pro se*, "substantially prevailed" in his litigation against the Government, brought pursuant to the Privacy Act, 5 U.S.C. § 552a (1994), in conjunction with the Freedom of Information Act, 5 U.S.C. § 552 (1994) ("FOIA"), seeking access to and amendment of documents in

his personnel file at the Central Intelligence Agency ("CIA"). He now challenges the District Court's denial of his motion for attorneys' fees and litigation costs under the Privacy Act. He argues that the District Court erred in applying standards applicable to FOIA in assessing his claims arising under the Privacy Act.

The Government resists Mr. Blazy's appeal on several grounds. First, the Government asserts that fees for attorneys consulted by a *pro se* plaintiff are not recoverable under either FOIA or the Privacy Act. Second, the Government argues that Mr. Blazy is not entitled to recover his claimed costs because they do not fall within the compass of allowable costs under 28 U.S.C. § 1920 (1994). The Government further contends that because Mr. Blazy invoked both FOIA and the Privacy Act and because the language of FOIA's and the Privacy Act's fee-shifting provisions are nearly identical, the District Court properly applied FOIA's standards to Mr. Blazy's Privacy Act claims. Finally, the Government insists that Mr. Blazy's claims for fees and costs should fail because they have not been substantiated.

We affirm the District Court's ruling that Mr. Blazy's *pro se* status does not by itself preclude the recovery of fees for consultations with outside counsel. We also affirm the judgment of the District Court that § 1920 does not provide an exhaustive list of recoverable costs under the Privacy Act, because a litigant can recover "other reasonable litigation costs" under the Privacy Act that are beyond the scope of § 1920. However, we reject the District Court's assumption that Mr. Blazy's claims for fees and litigation costs must be evaluated under judicial precedent construing FOIA. Mr. Blazy's claims clearly arise under the Privacy Act. Therefore, it would be illogical to evaluate his requests for fees and litigation costs pursuant to tests designed to assess FOIA claims. Not only do FOIA and the Privacy Act serve very different purposes, but there is nothing in either statute or in the relevant legislative history that requires courts to resolve claims arising under the Privacy Act pursuant to standards developed to assess claims arising under FOIA.

Although Mr. Blazy clearly is eligible to seek fees and other litigation costs under the Privacy Act, most of his claims must be rejected for want of substantiation. With the exception of filing fees to which Mr. Blazy is entitled to recover, we affirm the District Court's conclusion that Mr. Blazy's other claims for fees and litigation costs must be denied. We reach this result not because Mr. Blazy failed to satisfy FOIA standards, but instead because his claims fail for want of documentation.

## I. BACKGROUND

Mr. Blazy "brought this action pursuant to the Privacy Act, in conjunction with the Freedom of information Act, seeking access to and amendment of documents in his personnel file at the Central Intelligence Agency where he was formerly employed." *Blazy v. Tenet*, 979 F.Supp. 10, 14 (D.D.C.1997) (citations omitted). Mr. Blazy's difficulties first arose in 1989 when he was employed as a computer scientist with the CIA and was seeking employment with the FBI. When the FBI, as part of its background check, sought information on Mr. Blazy from the CIA, Mr. Blazy made inquiries of his own to review files under his name with the CIA to insure that they were accurate. After discovering that his files contained charges of sexual harassment, Mr. Blazy complained and was subsequently assured by the CIA's Director of Security that the allegations were unfounded and that the FBI would be so notified. *See id.* at 15. In August 1990, Mr. Blazy wrote to the FOIA and Privacy Act Branch of the CIA requesting "a copy of all documents collected and maintained in various files listed under my name." *Id.* (internal quotation marks omitted). It took nearly four years before the CIA finally released some documents to Mr. Blazy in response to his request. Dissatisfied with what he received, Mr.

Blazy then filed this action in District Court, "alleging that he had not received all the documents to which he was entitled and that his records contained inaccuracies and misstatements that had caused him to be denied the FBI job. Defendants moved to dismiss and, on January 31, 1996, the Court dismissed some parts of the complaint but preserved the central Privacy Act claims against the agency itself." *Id.*

It is unnecessary to detail every aspect of the contest that ensued between Mr. Blazy and the Government, for the history of the parties' litigation is amply described in the opinion of the District Court. *See id.* at 15–16 (providing a detailed factual summary). Throughout the litigation before the District Court, Mr. Blazy "maintained ... that his records contain[ed] inaccuracies, that documents [were] missing, that information ha[d] been improperly redacted, that information was improperly disseminated, and generally that the CIA ha[d] failed to comply with the disclosure provisions and accuracy guarantees of the Privacy Act. As a result, he allege[d] that he was denied the FBI job and continue[d] to be prejudiced in his ability to obtain employment." *Id.* at 16. Suffice it to say, it was only after extensive proceedings before the District Court that Mr. Blazy's requests for access to and amendment of documents in his personnel file at the CIA were adequately addressed.

On September 17, 1997, after the CIA had released additional documents to Mr. Blazy, the District Court concluded that the agency had finally conducted an adequate search of its records. The court thus determined, *inter alia*, that the CIA had not violated the Privacy Act and had properly invoked FOIA's exemptions with regard to all of the redacted or withheld documents save 15. *See id.* at 25–26. After viewing those 15 documents *in camera*, the District Court concluded that they had properly been withheld under FOIA. *See Blazy v. Tenet*, 979 F.Supp. 10 Civ. Act. No. 93–2424, Supp. Op. at 1–2 (D.D.C. Dec. 3, 1997), *reprinted in* Joint Appendix

("J.A.") 238–39. A Special Panel of this court summarily affirmed the judgment of the District Court. *See Blazy v. Tenet*, 1998 WL 315583, No. 97–5330 (D.D.C. May 12, 1998) (affirming the District Court's order granting summary judgment). Subsequently, on April 6, 1998, the District Court denied Mr. Blazy's motion for fees and litigation costs. The trial court found that Mr. Blazy had "substantially prevailed" in his claims against the Government, because "the filing of the suit and the Court's involvement were directly responsible for the release of all documents to which plaintiff was entitled." The District Court thus concluded that Mr. Blazy was *eligible* for an award of fees and litigation costs. However, the District Court held that Mr. Blazy was not *entitled* to an award of fees and litigation costs, because his case failed to satisfy the four-factor test used to determine fee entitlements under FOIA. *Blazy v. Tenet*, Civ. Act. No. 93–2424, Mem. Op. at 6–8 (D.D.C. Apr. 6, 1998), *reprinted in* J.A. 268–70. In particular, the District Court noted that Mr. Blazy's case did not concern matters of public interest, his motives were wholly personal because the records affected only his employment prospects, and the agency did not act in bad faith. *See id.* at 7–8, *reprinted in* J.A. 269–70.

Mr. Blazy appealed and moved for summary reversal. The Government similarly moved for summary affirmance. In a *per curiam* order dated November 5, 1998, a Special Panel denied the motions for summary disposition and ordered that *amicus curiae* be appointed to present argument on behalf of Mr. Blazy.

## II. DISCUSSION

### A. *Pro Se Litigants* and *Litigation Costs Under 28 U.S.C. § 1920*

The District Court made two threshold decisions in determining that Mr. Blazy was *eligible* for attorney fees and litigation costs under the Privacy Act: First, the court held that Mr. Blazy's *pro se* status does not by itself preclude the recovery of

fees for consultations with outside counsel. Second, the court found that 28 U.S.C. § 1920 does not provide an exhaustive list of recoverable costs under the Privacy Act, because a litigant can recover "other reasonable litigation costs" under the Privacy Act that are beyond the scope of § 1920. Both of those holdings were correct.

■ The Government argues that Mr. Blazy cannot recover fees for consultations with licensed attorneys because he is a *pro se* litigant. This claim is baseless. In support of its position, the Government relies on the decisions in *Kay v. Ehrler*, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), and *Burka v. United States Dep't of Health and Human Servs.*, 142 F.3d 1286 (D.C.Cir.1998). However, neither decision supports the Government's view in this case.

*Kay* stands for the proposition that "an attorney who represented himself in a successful civil rights case could not recover attorney's fees under 42 U.S.C. § 1988," *Burka*, 142 F.3d at 1288, because Congress likely used the word "attorney" in the fee provision to invoke "an agency relationship, and it seems likely that Congress contemplated an attorney-client relationship as the predicate for an award under § 1988." *Kay*, 499 U.S. at 435–36, 111 S.Ct. 1435. The Court reasoned that the provision's specific purpose was to "enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." *Id.* at 436, 111 S.Ct. 1435. Parties who appear *pro se* are "deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." *Id.* at 437, 111 S.Ct. 1435. Thus, the rule against awarding fees to *pro se* litigants stems from a judgment that "[t]he statutory policy of furthering the successful prosecution of meritorious claims is

better served by a rule that creates an incentive to retain counsel in every such case." *Id.* at 438, 111 S.Ct. 1435. Our decision in *Burka* merely adds that an *attorney* who is a *pro se* plaintiff and who has substantially prevailed on a FOIA claim cannot be awarded attorney's fees under FOIA. Mr. Blazy's claim in the instant case is not inconsistent with the statutory policy enunciated in *Kay* and *Burka*.

Mr. Blazy is not seeking to collect attorneys' fees for his own work on this case; rather, he is claiming fees for lawyers with whom he consulted throughout this case. Thus, his *pro se* status is irrelevant to the claims at issue. We differ with our concurring colleague on this point, because we find nothing in the statute or the case law that requires an attorney to file a formal appearance in a case in order for a litigant to claim fees. As we stated in *Burka, pro se* litigants are eligible to claim fees so long as their outside counsel "enjoyed a genuine attorney-client relationship . . . , were situated to offer 'independent' legal advice and assistance, and were presumably paid for their services." *Burka*, 142 F.3d at 1291. Accordingly, we affirm the District Court's conclusion that Mr. Blazy's *pro se* status does not by itself preclude the recovery of fees for consultations with outside counsel.

■ We also agree with the District Court's holding that § 1920 does not bar Mr. Blazy's claim for costs in this case. Mr. Blazy seeks litigation costs under the Privacy Act, which provides that

(B) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed.

5 U.S.C. § 552a(g)(2)(B). The District Court correctly noted that the reference to "other litigation costs" expanded the scope of costs available under the Privacy Act beyond the limits of § 1920.

The costs provision in the Privacy Act mirrors a provision in FOIA, which also allows a prevailing party to claim "other litigation costs." 5 U.S.C. § 552(a)(4)(E). We note with agreement that, in construing this provision, the court in *Kuzma v. Internal Revenue Service,* 821 F.2d 930 (2d Cir.1987), explicitly rejected the Government's contention that costs under FOIA were limited by § 1920. *Id.* at 933. The *Kuzma* court specifically determined that "[t]he statutory language and the purposes of the relevant sections, as well as the legislative history and decisions of various other courts, lead us to conclude that an award of costs pursuant to § 552 is not limited to those authorized by § 1920." *Id.* at 932. In particular, the Second Circuit noted that by adding the phrase "other litigation costs" to FOIA in 1974, Congress necessarily intended to expand the "scope of costs already recoverable against the government under § 1920." *Id.* To hold otherwise would, "in effect, excise the words 'other litigation costs' from the statute by rendering them meaningless." *Id.* We agree. And we also hold that the Second Circuit's reasoning with respect to claims for costs under FOIA applies with equal force to claims under the Privacy Act. This is not to say that FOIA claims and Privacy Act claims must always be resolved in the same way; rather, it is to say that § 1920 does not serve as a limit on recovery of litigation costs under either FOIA or the Privacy Act.

*B.  The Standard for Assessing Entitlement to Fees and Litigation Costs for Claims Arising Under the Privacy Act*

■ Although the District Court found that Mr. Blazy was *eligible* to claim fees and litigation costs under the Privacy Act, the court denied the claims because Mr. Blazy could not satisfy judicially-adopted standards that have been used to assess claims for fees and litigation costs under FOIA. This was a mistake.

Both FOIA and the Privacy Act state, in like terms, that parties who prevail against the Government on claims under the statutes may seek reasonable attorney fees and other litigation costs. Because the statutory fees and costs language is the same, some courts have assumed, with no apparent justification, that claims for fees and litigation costs under the Privacy Act should be assessed pursuant to the same standards used to assess fees and litigation costs under FOIA. *See, e.g., Gowan v. United States Dep't of the Air Force,* 148 F.3d 1182, 1195 (10th Cir.1998) ("[W]e note that the Privacy Act attorney's fee provisions are substantially similar to the fee provision of the Freedom of Information Act. Consequently, like at least two of our sister circuits, we shall apply a FOIA attorney's fee analysis to this Privacy Act case.") (internal citation omitted); *Barrett v. Bureau of Customs,* 651 F.2d 1087, 1088 (5th Cir. Unit A July 1981) (noting that FOIA's guidelines apply to claims for attorneys' fees under the Privacy Act). Indeed, even this court, in dicta, has suggested that "[c]ases construing the identical attorneys' fees provision in the Freedom of Information Act ... are apposite as well in the Privacy Act context." *Sweatt v. United States Navy,* 683 F.2d 420, 423 (D.C.Cir.1982) (Sweatt was found not to have "substantially prevailed" under the Privacy Act, so he was *ineligible* for fees). On close examination, however, it is clear that there is no justification for a court to blindly embrace standards used under FOIA to assess claims for fees and litigation costs presented by prevailing parties under the Privacy Act.

The Privacy Act of 1974 "safeguards the public from unwarranted collection, maintenance, use, and dissemination of personal information contained in agency records ... by allowing an individual to participate in ensuring that his records are accurate and properly used." *Bartel v. FAA,* 725 F.2d 1403, 1407 (D.C.Cir.1984). To effectuate that purpose, the Act requires any agency that maintains a "system of records" to publish at least annually a state-

ment in the Federal Register describing that system. 5 U.S.C. § 552a(e). In addition, any agency that maintains a system of records and receives a request by an individual to gain access to his records or to any information pertaining to him that is contained in the system must permit him to review his records and have copies made of all or any portion of the record in a form that is comprehensible to the requester. *See* 5 U.S.C. § 552a(d)(1).

■ Unlike FOIA, the Privacy Act's primary purpose is not disclosure. Rather, "the main purpose of the Privacy Act's disclosure requirement is to allow individuals on whom information is being compiled and retrieved the opportunity to review the information and request that the agency correct any inaccuracies." *Henke v. United States Dep't of Commerce*, 83 F.3d 1453, 1456–57 (D.C.Cir.1996). Indeed, although both FOIA and the Privacy Act "evidence Congressional concern with open government, and especially, accessibility of government records," *Greentree v. United States Customs Serv.*, 674 F.2d 74, 76 (D.C.Cir.1982),

> [e]ach seeks in different ways to respond to the potential excesses of government. Each, therefore, has its own functions and limitations. While the Privacy Act was designed to provide *individuals* with more control over the gathering, dissemination, and accuracy of agency information about themselves, FOIA was intended to increase the *public's* access to governmental information.

*Id.* at 76 (citations omitted).

Thus, although both FOIA and Privacy Act address the general problem of government accountability, the two statutes sometimes work at cross purposes. *See Legislative History of the Privacy Act of 1974*, at 861 (1976) (noting that the original congressional staffs observed that "[p]erhaps the most difficult task in drafting Federal privacy legislation was that of determining the proper balance between the public's right to know about the conduct of their government and their equally impor-

tant right to have information which is personal to them maintained with the greatest degree of confidence by Federal agencies").

The tension between the two Acts' purposes reveals itself most starkly when courts attempt to apply standards developed to address claims arising under FOIA to Privacy Act claims. "This Court has directed the district court to consider at least four criteria in determining whether a substantially prevailing FOIA litigant is entitled to attorney's fees: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding." *Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1093 (D.C.Cir.1992). Even a cursory examination of these factors makes it clear that they have little or no relevance in the context of the Privacy Act.

In the present case, the District Court held that Mr. Blazy was not entitled to fees and litigation costs because he could not satisfy the four FOIA criteria. *See Blazy*, Mem. Op. at 7–8, *reprinted in* J.A. 269–70. The court reasoned that Mr. Blazy's case was a "personal" one that "did not concern matters in the public interest." *Id.* at 7, *reprinted in* J.A. 269. In addition, given that his "motives [were] wholly personal because the records at issue allegedly prejudiced his ability to obtain employment," the court found that the first three FOIA standards counseled against an award. *Id.* Finally, the court found that although the Government had produced "sluggish" responses to Mr. Blazy's requests, there was no proof of bad faith and that the Government's denial of information had not been without a reasonable basis in law. *Id.* at 8, *reprinted in* J.A. 270.

Such an analysis of Mr. Blazy's claims is illogical in light of the purposes of the Privacy Act. It makes no sense whatever to require an individual who relies upon a

statute whose purpose is to "provide *individuals* with more control over the gathering, dissemination, and accuracy of agency information about themselves," and not to "increase the *public's* access to governmental information," to vindicate broad public interests in order to recover fees and litigation costs. *Greentree,* 674 F.2d at 76. It is clear beyond cavil that a claimant's rights under the Privacy Act are based largely on *private* interests; indeed, this is hardly surprising given the appellation of the statute. Therefore, a prevailing claimant under the *Privacy* Act surely cannot be disqualified from fees and litigation costs because his or her interests are principally private in nature.

Moreover, there is nothing in the relevant legislative history of either FOIA or the Privacy Act that mandates application of the FOIA four-factor test to claims arising under the Privacy Act. At best, FOIA's legislative history evinces congressional deliberations providing insight into the lineage of the FOIA criteria. *See Burka,* 142 F.3d at 1293 (Wald, J., concurring) ("The requirement that the petitioner show some public benefit to obtain attorney's fees is deeply rooted in the legislative history of FOIA.... Although the conference committee later eliminated the test's four criteria from the statute, the conference report indicates that Congress intended courts to consider such factors in exercising their discretion to award attorney's fees."). But there is no indication whatsoever in either Act's legislative history that Congress intended these factors to govern the assessment of claims arising under the Privacy Act.

Interestingly, Judge Randolph's concurring opinion in *Burka* rejects even the suggestion that the aforecited four-factor test should have relevance in the context of FOIA:

> I find it far more telling that [the cited] criteria were weeded out of the original Senate version of FOIA—where they would have had the binding force of law—and transplanted to the conference

report—where they do not. Although we have applied these criteria in the past, they deserve another look. For instance, one of the factors is "the public benefit derived from the case." *Chesapeake Bay Found., Inc. v. United States Dep't of Agric.,* 11 F.3d 211, 216 (D.C.Cir.1993). Courts deciding an attorney's fees dispute are not in a position to make that sort of judgment objectively. One person's public good is often another person's public harm. Besides, FOIA plaintiffs do not sue in the public interest; if anyone represents "the public" in these cases it is the United States or the agency defending the action. Making eligibility for a fee award turn on "public benefit" has a nice ring, but it is not tied to any language or policy of FOIA. Once a FOIA plaintiff receives the information sought from the government, he has no obligation to share it with "the public," or with anyone else. What he plans to do with the documents has no bearing whatever on his right to receive them.

142 F.3d at 1293 (Randolph, J., concurring). Judge Randolph's arguments have even greater force with respect to claims arising under the Privacy Act, because of the undisputedly *private* nature of these claims.

In any event, we think it is clear that the District Court erred in rigidly relying upon the standard enunciated in *Tax Analysts,* 965 F.2d at 1093, *Chesapeake Bay Foundation, Inc. v. United States Dep't of Agric.,* 11 F.3d at 216, and other such FOIA cases, in assessing Mr. Blazy's claims under the Privacy Act.

## C. Mr. Blazy's Lack of Documentary Support

■ Although we find that Mr. Blazy was plainly *eligible* to seek fees and litigation costs under the Privacy Act, this is not the end of our inquiry. At bottom, we conclude that, with the exception of filing fees to which he was entitled to recover,

Mr. Blazy's claims were properly denied for want of substantiation.

There can be no doubt that the District Court had documentary evidence that Mr. Blazy paid his filing fees. His appearance before the court attests to that fact. Mr. Blazy failed, however, to provide the District Court with documentary evidence to support his remaining requests for fees and litigation costs. Instead, he simply noted that he would "provide the Court a break-down of his costs, at the Court's request." Plaintiff's Motion for Attorney Fees, Administrative Costs, and Other Litigation Costs at 7, *reprinted in* J.A. 231. Even after the Government's opposition brief put him on notice that the necessary documentation was missing, *see* Defendants' Opposition to Plaintiff's Motion for Attorney Fees, Administrative Costs and Other Litigation Costs at 3, *reprinted in* J.A. 236; Defendants' Further Opposition to Plaintiff's Motion for Attorney Fees, Administrative Costs and Other Litigation Costs at 2, *reprinted in* J.A. 253, Mr. Blazy still failed to provide the requested documentary support.

In its reply brief in support of Mr. Blazy, *amicus* acknowledges both that Mr. Blazy only "briefly described the items he was claiming" and that the Government had opposed this approach by asserting that it was Mr. Blazy's burden to provide a detailed submission. Reply Br. of *Amicus Curiae* in Support of Appellant at 17. *Amicus* nonetheless reasserts Mr. Blazy's contention that he would have produced a more detailed break-down of his costs at the court's request. *See id.* at 22. In addition, *amicus* argues that because Mr. Blazy was a *pro se* litigant when he appeared before the District Court, this court should grant him some leeway. *See id.* at 18. *Amicus* asserts:

> [E]ven a plaintiff well versed in the technical intricacies of federal civil procedure would reasonably conclude that there was no need for him to provide detailed documentation at the time of his motion.... Here, Mr. Blazy could have

reasonably concluded that the district court would tell him "in due course" what type of documentation he must provide to support his fee and cost-shifting application and when to provide it—especially given his offer to "provide the Court a break-down of his costs, at the Court's request."

*Id.* at 19–20. We cannot accept this argument.

Government counsel's repeated and forceful objections should have put Mr. Blazy on notice that his undocumented claims were under serious challenge. And even a cursory glance at this circuit's case law, *see, e.g., National Ass'n of Concerned Veterans,* 675 F.2d 1319 (D.C.Cir.1982) (per curiam), would have informed him of his "heavy obligation to present well-documented claims," *id.* at 1324, and alerted him to the requirement that once "the reasonableness of the hours claimed becomes an issue, the applicant should voluntarily make his time charges available for inspection by the District Court or opposing counsel on request," *id.* at 1327. It is too late in the day for Mr. Blazy to offer documentation for claims that should have been substantiated months ago before the District Court.

### III. CONCLUSION

Mr. Blazy's claim for fees and other litigation costs under the Privacy Act is granted in part and denied in part. He is hereby granted a judgment for an award of costs in the amount of his filing fees; however, all of his other claims for fees and litigation costs are denied for want of documentation. For the reasons herein indicated, the judgment of the District Court is affirmed in part and reversed in part.

*So ordered.*

SENTELLE, Circuit Judge, concurring in part and concurring in the result:

I concur completely in the result reached by the majority, and in sufficient

of its reasoning to support every part of it. However, I write separately only to distance myself from the majority's determination that a *pro se* litigant is entitled to recover counsel fees for consultations with attorneys not appearing or connected with appearances in the *pro se* litigation, a resolution not necessary to the decision in the case, nor, in my opinion, a correct one. That portion of the decision is inconsistent with both the language and the policy of fee-shifting statutes, as determined by the Supreme Court.

Blazy's claim arises under 5 U.S.C. § 552a(g)(3)(B), providing, *inter alia,* that "[t]he court may assess against the United States reasonable attorney fees ... reasonably incurred in any case" covered by the statute. The relevant language is the same or substantially the same as various other fee-shifting statutes. The Supreme Court construed one of those statutes, 42 U.S.C. § 1988, in *Kay v. Ehrler,* 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). That case, like this one, involved a plea for fees by a *pro se* litigant. The Supreme Court denied that plea and held that a *pro se* litigant was not entitled to recover counsel fees. In my view, *Kay v. Ehrler* is controlling of the present case. Concededly, the Supreme Court's decision is distinguishable on two bases, but I submit that neither makes a difference in the appropriate result. First, and least importantly, *Kay v. Ehrler* did involve a different fee-shifting statute than the one before us. However, we have already held in *Burka v. United States Department of Health and Human Services,* 142 F.3d 1286 (D.C.Cir.1998), that its reasoning is applicable to other parallel fee-shifting statutes—in that case, FOIA. The more significant distinction, and the one which raises a legitimate question as to the applicability of *Kay v. Ehrler,* is that in that case the litigant, a licensed attorney, sought an award of fees for his own time, whereas in the present case, Blazy seeks an award for the fees of an attorney consulted by him who did not make an appearance in the cause and never represent-

ed him as to the matters at issue. Despite this distinction, I think both the language and the rationale of *Kay v. Ehrler* are applicable.

As the Supreme Court notes, the statute's use of the term "attorney" makes it "seem[ ] likely that Congress contemplated an attorney-client relationship as the predicate for an award under section 1988." 499 U.S. at 436, 111 S.Ct. 1435. As the Court further noted in *Kay,* "the definition of the word 'attorney' in Webster's Dictionary reads as follows: '[O]ne who is legally appointed by another to transact business for him; *specif:* a legal agent qualified to act for suitors and defendants in legal proceedings.'" *Id.* at n. 6, 111 S.Ct. 1435 (quoting WEBSTER'S NEW COLLEGIATE DICTIONARY 73 (1975)). That should remind us that, strictly speaking, having a law degree does not make one an attorney. A law school graduate may indeed be a "lawyer," but he is not acting as an "attorney" until he acts as the agent for someone else. Simply counseling someone else does not constitute acting as his agent and certainly does not constitute transacting business for him. The "lawyer" consulted by Blazy may have counseled him; but he did not transact business for him. He is not, therefore, an attorney as the term was construed by the Supreme Court in the context of fee-shifting in *Kay v. Ehrler.*

In addition to this semantic failure, Blazy's claim falls outside the rationale of *Kay v. Ehrler* as well. In rejecting the award of counsel fees to a *pro se* litigant in that case, the Supreme Court noted that the policies underlying the fee-shifting statutes represent a congressional interest in "filtering out meritless claims," and "ensuring the effective prosecution of meritorious claims." The Court further recognized that these interests are furthered by the employment of a professional "independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal argu-

ments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." *Id.* at 437, 111 S.Ct. 1435. Consulting with an attorney outside the litigation, and before the litigation, furthered none of those goals.

In rejecting the claim of the *pro se* litigant in *Kay v. Ehrler,* the Supreme Court noted that a rule that would "authorize[ ] awards of counsel fees to *pro se* litigants ... would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf." *Id.* at 438, 111 S.Ct. 1435. The rule adopted by the majority today provides less disincentive, but nonetheless provides an incentive to the *pro se* litigant who has received the advice and the professional function furthered by fee-shifting statutes to reject that advice and proceed as his own lawyer, "ha[ving] a fool for a client." *Id.*